UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| | ] |
| | ]   Criminal No.  21-142 |
| v. | ] |
| | ]   Judge Nichols |
| SAMUEL FISHER | ] |
| | ] |

**SENTENCING MEMORANDUM**

Defendant Samuel Fisher, through undersigned counsel, respectfully submits the following memorandum in support of sentencing.  The defense requests that he receive a sentence of time served.  This is 49 days of incarceration, from January 20, 2021, until March 10, 2021.

Mr. Fisher pled guilty at the earliest opportunity to the misdemeanor count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).  This is one of the least serious offenses in the U.S. Code, with  U.S. Sentencing Guidelines range of 0-6 months for Mr. Fisher.

### *I.  Sentencing Factors under 18 USC § 3553*

The factors under 18 U.S.C. section 3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to  promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guidelines range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The factors below relate to the appropriate sentence of the Court given all considerations in sentencing.

### A.       *Full and Early Acceptance of Responsibility*

By pleading guilty at the earliest opportunity, Mr. Fisher has fully accepted responsibility for his actions, sparing the Court, government and witnesses the cost and time of trial and trial preparation.

Since his release in March, 2021, Mr. Fisher has fully complied with all conditions of release.  His letter to the Court further shows that he takes responsibility for his actions, and

has completely transformed both his words and deeds. His remorse is shown through both his words and actions. Exhibit A.  (Due to his present incarceration in New York, Mr. Fisher was unable to transmit his statement in signed form prior to the filing of this motion.)

At the same time, his legal responsibility is limited by the government and by law to a misdemeanor, and he should be sentenced in that context.

In determining sentencing consideration for remorse, the Courts and Guidelines consistently focus on the defendant's behavior after the initiation of the criminal  case, rather than prior to a defendant's  arrest. For example, under the U.S. Sentencing Guidelines (U.S.S.G.),  sentencing level reductions for acceptance of responsibility apply to a defendant's action in pleading guilty after the initiation of the case.  U.S.S. G. § 3E1.1.   Defendants are not given a more punitive sentence under the U.S.S.G.  if they do not indicate remorse prior to filing of the initial charges.  Evidence of remorse after initiation of criminal charges  is key.  This is logical, as it encourages reflection and review, and focuses on the defendant's actions after a defendant has availed himself of his constitutional right to counsel through the initiation of the prosecution of the case.

The government has quoted social medica comments which Mr. Fisher made before his arrest to indicate that he does not understand the seriousness of the offense.  In fact, since his arrest and detoxification from alcohol in January 2021, it is clear that he has remained clear thinking and fully understands the wrongfulness of his actions.

### B.      *Physical and Mental Health*

Mr. Fisher has had ongoing mental health issues since his early teen years - issues which

were not properly addressed.  Exhibits B and C, filed under seal.

Mr. Fisher is an admitted alcoholic.  The effects of the pandemic on alcoholism and

other  mental health disorders, with concurring issues of isolation, are well documented.[1]

While his alcoholism does not excuse his actions, which is why he pled guilty, it does give his

actions context.  Before, during and after January 6, 2021, he regularly consumed inordinate

amount of liquor - about 1 ½ liters of vodka daily.  Since his release from incarceration in

March, 2021, Mr. Fisher has met all conditions of release, and has attended classes and

individual sessions to learn how to avoid the pitfalls of substance abuse and self-destruction.

When sober, his behavior is law abiding and outright productive.   While Mr.  Fisher recognizes

that alcoholism is a lifelong illness, he is determined upon his release to stay sober, law-abiding,

and be a positive member of the community.

### C.      Circumstances of the Case - The Actual Illegal Actions of Mr. Fisher

Mr. Fisher  joined hundreds of people marching to the Capitol.  He fully acknowledges

that he never should have illegally entered the Capitol.  While he did not personally destroy

anything, he illegally played a part in an unmanageable mob.   Mr. Fisher certainly is at the

---

[1]      See, e.g., The Effect of Covid-19 on Alcohol Use Disorder and the Role of Universal Alcohol Screening in an Inpatient Setting: A Retrospective Cohort Control Study,  Alcohol and Alcoholism, Vol.  57, Issue 2, March 2022, Pp 203–210, https://doi.org/10.1093/alcalc/agab059; The Worsening Outcomes of the COVID-19 Lockdowns on Patients with a History of Alcoholism, Alcoholism Treatment Quarterly, Volume 39, 2021 - Issue 3, April 12, 2021; Nirmita Panchal, et. al., KAISER FAMILY FOUNDATION, The Implications of COVID-19 for Mental Health and Substance Use, Feb.  10,  2021,  https://www.kff.org/coronavirus-covid-19/issue-brief/the-implications-of-covid-19-for-mental-health-and-substance-use/.

lowest level of illegal activity.    According to Ed Maguire, a criminologist at Arizona State

University, security forces are trained to ignore yelled insults and small acts of hostility, like

pushes and thrown water bottles. And they receive training in absorbing surges in a crowd,

moving people as gently as possible, and quickly responding to pockets of violence and isolating

agitators.  Benedict Carey, Making Sense of the 'Mob' Mentality, New York Times (Jan. 12,

2021), available at  https://www.nytimes.com/2021/01/12/science/crowds-mob-

psychology.html.   Mr. Fisher did not push or throw things.

After Mr. Fisher attended the rally at the Ellipse, he illegally entered the Capitol.  He

decided to illegally follow the mob rather than make an individual decision to leave.  But he

also exited the Capitol as directed.

As the government has clearly spent multiple hours combing footage of the events of

January 6, it is clear that Mr. Fisher did not attack any person or property, push or otherwise

assault anyone at the Capitol.  In fact, the videos introduced by the government show that he

calmly entered the Capitol through a doorway, and was in the building for less than 20 minutes

before exiting through another door.[2]

This illegal activity is clearly among the least culpable of any person who entered the

Capitol.

Mr. Fisher made a number of frenzied comments on social media.  While these

comments are not illegal, in themselves, he realizes their impact, and has taken responsibility

---

[2]        The government claims that he entered on one floor and left on another floor.  This is unclear to undersigned counsel, but regardless, he did not enter any rooms or open doors, but rather stayed in the main visiting areas.

for the incendiary comments.  This contrasts with many other misdemeanor defendants among the January 6 cases.  Since his release in March 2021, he has been sober, realizes the wrongfulness of his words, and has not engaged in such rhetoric.  Instead, he has used his energy productively.

The government also points to his firearms charges in New York.  It should be noted that the sentencing Court in New York, the Honorable Robert Mandelbaum, after carefully considering all of the facts, recommended that his New York sentence "run concurrently with any time served on his related federal case." People v. Samuel Fisher, Indictment 1085/2021, 70508/2021, Supreme Court of the State of New York, Sentencing Transcript April 4, 2022, p. 11.

The New York case was based on a Federal search warrant of an apartment and automobile, in turn based on investigation of social media statements in relation to January 6, 2022.  No weapons were recovered from Mr. Fisher's person at his arrest in New York.  The government has emphasized weapons he was charged with in New York, and which he did NOT bring into Washington, DC.  The government wants him to be punished in this case for deciding NOT to bring weapons into the District of Columbia.

### D.    Remorse and Rehabilitation

Mr. Fisher's relative has  informed the Court that he happened to see Mr. Fisher on the street after his release in March, 2021, and that Mr. Fisher spontaneously told him that he had made a grave mistake, and would have to take responsibility for it.  Exhibit D.  This unscripted admission by Mr. Fisher is a true sign of remorse.

Post-arrest rehabilitation is an important consideration in sentencing under 18 USC § 3553.  The U.S. Supreme Court stated in <u>Pepper v. United States</u>, 562 U.S. 476,  (2011) that a defendant's rehabilitation can be an important factor in sentencing under section 3553 in a number of ways:  For example, evidence of rehabilitation:

> "...may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) --in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); <u>see</u> <u>McMannus</u>, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)."
>
> <u>Pepper</u>, <u>supra,</u> at 491.

Since Mr. Fisher's arrest he has done everything possible to abide by his conditions of release and have a positive impact in his community, while fully accepting responsibility for his actions on January 6.   A co-worker who Mr. Fisher met in mid-2021, after his release in this case, explained that upon meeting Mr. Fisher, Mr. Fisher was open about his recent incarceration.  Despite the co-worker's knowledge of Mr. Fisher's past, he has praised Mr. Fisher's exceptional work ethic.  Exhibit E.   Mr. Fisher has worked hard and put in countless hours of overtime.   He had consistently high ratings on the mover's apps that connect consumers needing a moving service with a service provider.

Mr. Fisher's actions include not only work, but regular counseling and alcoholic anonymous (AA) meetings.  His commitment to AA was specifically noted by his coworker. Exhibit E.

Since his sentencing and incarceration in New York, Mr. Fisher has used his time to further his skills and assist other inmates.  Exhibit F, filed under seal.   He is presently taking a number of courses, including solar technology classes, job readiness classes, and a substance abuse class.  He has completed a lengthy series of classes and successfully passed an exam for a legal research certificate.   Exhibit F-3.  Importantly, he is assisting with inmate orientation, and is his dorm representative for the facility.   Mr. Fisher is doing everything possible to improve his own life and the lives of other inmates in very difficult circumstances.

### E.       *Sentencing Guidelines Range*

The parties agree that the U.S. Sentencing Guidelines range for this misdemeanor conviction, which is appropriate here, allows  for a sentence including  no incarceration, with a maximum sentence of 6 months incarceration

### F.       *The Impact of the Coronavirus Pandemic*

Mr. Fisher's period of incarceration during his transfer from his arrest in New York to arraignment in the District of Columbia was not normal, in any sense of the word.  He was initially placed in isolation in New York for 8 days, where he had to undergo both detoxification from alcohol, and the extreme stress of isolation.  Then he was transferred by bus and plane to a transfer facility in Oklahoma.  He became ill at that facility, which he believes was COVID 19. The Oklahoma facility is intended as a transfer facility, rather a sentencing detention facility,

and overcrowded conditions at the facility during the height of the pandemic were much worse

than during nonpandemic times.

When Mr. Fisher finally arrived in Washington, DC, at his arraignment on March 10,

2022, the government did not oppose his release on these misdemeanor charges.  He was

taken to New York pursuant to a New York arrest warrant, charged in New York, and released

on March 15, 2021.  He was released while the pandemic was still raging, hindering his ability to

meet with undersigned counsel.

The national emergency – now in its third year - has had a severe impact on the entire

nation, but our nation's prisons and jails have been particularly susceptible to illness and death.

Regardless of vaccination status, prisons are a cesspool for infectious disease.  As of the filing of

this motion, the BOP website for the Oklahoma facility transfer facility states: "All visiting at this

facility has been suspended until further notice" - presumably due to Covid-19 transmission.

When requesting calls to his facility in New York, staff first has to determine whether his unit is

quarantined, and unavailable for calls.

G.      *Comparative Cases*

The cases cited by the government do not support further incarceration for Mr. Fisher.

The government cites United States v. Coffman, 21-cr-4 (CKK) as a comparative case.   In

Coffman, the defendant made a very different decision than Mr. Fisher - he decided to bring

multiple guns into the District of Columbia.  Mr. Coffman was consequently charged and

convicted of felony weapons offenses in the District of Columbia.

The government also cites <u>United States v. Meteer</u>, 21-cr-630 (CJN).   Meteer had to be

forcibly pushed from the House Interior hallway.   Meteer was already a  convicted felon,

prohibited from owning weapons or ammunition, when agents located firearms in his home

after January 6, 2021.  Six months after he was arrested and charged Meteer told an

interviewer he was proud of his role,  and  the violence of January 6 was justified.   This

contrasts greatly with Mr. Fisher, who had no convictions prior to January 6, 2021, and has

transformed his life since his arrest in this case.

### H.      Just Punishment

Mr. Fisher has a conviction which, in and of itself, is quite punitive.  The conviction

affects possible job opportunities, and will remain with him for the rest of his life.

Mr. Fisher was incarcerated upon his arrest in New York for this case, on January 20,

2021.  He was held until his transfer to DC, and arraignment on March 10, 2021, 49 days later,

at which time the government did not oppose his release.    His circumstances of incarceration

are described above.

Upon his release in this case he was taken to New York to face gun possession charges.

New York prosecutors were alerted to the illegal firearms in New York due to his DC case.  He

pled guilty in that case and on April 4, 2022, was sentenced to the mandatory minimum 3 ½

years incarceration, recommended concurrent to his Federal sentence,  followed by 3 years

supervised release.   He is presently serving his sentence in New York, and as stated previously,

is availing himself of all possible rehabilitation efforts at the facility.

In 2021, at age 32 years, Mr. Fisher's first arrest was for this case.  In 2022, at age 33 years, he received his first conviction, for possession of a firearm in New York, and has received a substantial sentence.   He has achieved sobriety, promptly admitted responsibility, and completely changed his lifestyle.

Mr. Fisher is serving a 3 ½ year sentence of incarceration in New York, which will be followed by 3 years supervised release.  His additional incarceration here would not add to the punitive or rehabilitative goals of sentencing, and supervised release would be redundant and duplicative to his supervision in New York.

## II.  Conclusion

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  Gall v. United States, 552 U.S. 38,52  (2007) citing Koon v. United States, 518 U.S. 81, 113 (1996).

Mr. Fisher requests a sentence of time served in this case.   Particularly given his acceptance of responsibility, and the unique circumstances of the case, there is no reason to believe that he would commit this offense in the future.

Respectfully submitted,

        /s/
Joanne D. Slaight, #332866
400  7th Street, N.W.,  Suite 206
Washington, DC  20004
Phone (202) 256-8969
Email:  jslaight@att.net

11